**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cr-60274-BLOOM**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SIMON ITAH,

      Defendant.

_____/

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

**THIS CAUSE** is before the Court upon Defendant Simon Itah's ("Defendant") Motion for Compassionate Release, ECF No. [86] ("Motion"). The Government filed its Response, ECF No. [92], to which Defendant has not filed a reply. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.   BACKGROUND**

On November 25, 2019, Defendant pled guilty to conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. ECF No. [23]; Plea Agreement, ECF No. [25]. On February 14, 2020, this Court sentenced Defendant to a total term of imprisonment of 28 months, followed by 3 years of supervised release. ECF No. [52]. Defendant is currently housed at FCI Miami, and is scheduled to be released from custody on November 8, 2021.

In the Motion, Defendant requests a reduction in sentence due to the ongoing COVID-19 pandemic, arguing that his underlying medical condition—namely, obesity—puts him at an increased risk of contracting a severe case of the virus. Defendant adds that he has a wife and 3 children, who he has not been able to see due to COVID-19 restrictions. The Government opposes

the Motion, arguing that compassionate release is not warranted in this case because no extraordinary and compelling reasons exist.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 29,708,385 confirmed cases and 540,503 reported deaths as of March 23, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Mar. 23, 2021).

Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant here seeks compassionate release, pursuant to § 3582(c)(1)(A), which states:

(c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
          (i) extraordinary and compelling reasons warrant such a reduction . . . .
          . . . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

As has been recognized by various courts, the Sentencing Commission ("Commission") has not implemented a new policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases). Rather, the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.4 (U.S. Sent'g Comm'n 2018).

This leaves district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission—unable to take any official action— has not made the policy statement for the old regime applicable to the new one.

*Id.* at 449.

While the Court of Appeals for the Eleventh Circuit has yet to address the issue,[2] four

---

[2] *See United States v. Abreu*, No. 20-12208, 2020 WL 7774951, at *1 n.1 (11th Cir. Dec. 30, 2020) (noting that the Eleventh Circuit has "not issued a published opinion addressing several key issues about the First

other circuits have recognized that the Commission lacks an applicable policy statement for when

a district court can grant compassionate release, and have accordingly held that § 1B1.13 does not

apply to cases where a defendant files a motion for compassionate release, rather than the BOP.

*See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020) ("[T]hough motions by the BOP

still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as

surviving, but now applying only to those motions that the BOP has made."); *United States v.*

*McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not

apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098,

1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to

cases where an imprisoned person files a motion for compassionate release."); *United States v.*

*Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable'

policy statement covering prisoner-initiated applications for compassionate release. District judges

must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

deferential appellate review.").

> Courts across the country . . . still rely on § 1B1.13 for guidance as to the
> "extraordinary and compelling reasons" that may warrant a sentence reduction. *See*
> [*United States v. Drummond*, No. 1:97-cr-0019 (N.D. Ga. Sept. 27, 2019)] (viewing
> § 1B.1.13 as "non-binding guidance"); *see also United States v. Solis*, No. 16-015-
> CG-MU, 2019 WL 2518452, at *2-3 (S.D. Ala. June 18, 2019); *United States v.*
> *Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7,
> 2019). However, the Court is not *limited* to the technical requirements set forth in
> § 1B1.13 in assessing whether a defendant's application for compassionate release
> provides "extraordinary and compelling reasons" for a sentence reduction under §
> 3582(c)(1)(A)(i). *See, e.g.*, [*United States v. Ullings*, No. 1:10-cr-00406, 2020 WL
> 2394096, at *2 (N.D. Ga. May 12, 2020)] (citing *United States v. Perez*, 451 F.
> Supp. 3d 288, 294 (S.D.N.Y. 2020)); *United States v. Beck*, 425 F. Supp. 3d 573,
> 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance,

---

Step Act's recent amendments to § 3582(c)(1)(A)—like, for example, the standard of review, any
procedural and jurisdictional requirements, or the definition of 'extraordinary and compelling
circumstances'—although several cases have been classified for oral argument to resolve these questions.
*See, e.g.*, *United States v. McKreith*, appeal no. 20-10450; *United States v. Bryant*, appeal no. 19-14267;
*United States v. Friedlander*, appeal no. 19-13347.").

it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); [*United States v. Beard*, No. 1:16-CR-285-SCJ (N.D. Ga. June 25, 2020); *United States v. Kowalewski*, No. 2:13-CR-00045-RWS (N.D. Ga. Apr. 30, 2020); *United States v. Hill*, No. 1:05-CR-0081-LMM (N.D. Ga. June 10, 2020); *United States v. Noble*, No. 1:09-CR-315-MHC (N.D. Ga. Nov. 24, 2020)].

*United States v. Poulnott*, --- F. Supp. 3d ---, No. 1:89-cr-00001-AT-ALC-1, 2020 WL 7974295, at *3 (N.D. Ga. Dec. 30, 2020).

Upon review, the Court agrees with the reasoning of the Circuit Courts across the country that district courts are not bound by § 1B1.13. The Court further notes that this reasoning seemingly complements the Eleventh Circuit's recent observation that the policy statement in § 1B1.13 "'notably' has not been updated since the passage of the First Step Act and refers only to motions filed by the Director of the Bureau of Prisons." *United States v. Hewlett*, No. 5:93-CR-00137-SLB-SGC-2, 2020 WL 7343951, at *4 (N.D. Ala. Dec. 14, 2020) (quoting *United States v. Gist*, No. 20-13481, 2020 WL 7227282, at *1 (11th Cir. Dec. 8, 2020)). Thus, while § 1B1.13 provides useful guidance for addressing motions for compassionate release, the Court concludes that it is not bound by this guidance.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

*First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

As an initial matter, the Court recognizes that Defendant has exhausted his administrative remedies in this case, and the Government does not dispute that the exhaustion requirement is satisfied. Nevertheless, as explained below, Defendant's Motion fails to satisfy the remaining considerations under the compassionate release analysis.

With regard to the "extraordinary and compelling reasons" analysis, Defendant fails to demonstrate that sufficiently compelling circumstances exist under § 3582(c). In his Motion, Defendant explains that he is particularly vulnerable to the risk of contracting COVID-19 because of his medical conditions—namely, obesity. The Government, however, argues that "obesity alone is by no means a sufficient reason for this or any other defendant to be released from prison under compassionate release law." ECF No. [92] at 2.

CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity

(body mass index of 30 or higher), severe obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes.[3] In addition, adults of any age with the following conditions might be at an increased risk for severe illness: asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies of HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions such as dementia, liver disease, overweight, pulmonary fibrosis, thalassemia, and type 1 diabetes.[4]

The Court is certainly sympathetic to Defendant's health condition and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that his obesity is a CDC-recognized risk factor for COVID-19.[5]   However, aside from alleging that he has a body mass index that qualifies as obese (body mass index of 30.1),[6] Defendant fails to demonstrate that his present ailment is terminal, that it substantially diminishes his ability to provide self-care within the correctional facility, or that it is not being properly attended to by the BOP.[7] Additionally, while

---

[3]  *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 15, 2021).

[4]  *Id*.

[5]  *Id.*

[6]  The Court further notes that Defendant's health condition has not changed since the time of sentencing. *See* ECF No. [86] at 7 ("[Defendant] is obese since he is 5'10" tall and weighs 210 pounds with a BMI of 30.1 according to paragraph 65 of the Presentence Investigation Report.") (citing ECF No. [46] ¶ 65)).

[7]  The "**OBESITY**" cases cited by Defendant, ECF No. [86] at 11, n.4 (emphasis in original), are drastically distinguishable from the case at hand. *See United States v. Handy*, No. 3:10-cr-128, 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (granting compassionate release where defendant suffered from congestive heart failure, hypertension, obesity, and chronic knee issues); *United States v. Barber*, 466 F. Supp. 3d 1127, 1130 (D. Or. 2020) (hypertension, obesity, and diabetes); *United States v. Hunt*, 459 F. Supp. 3d 932, 934 (E.D. Mich. 2020) (congestive heart failure, type two diabetes, asthma, obesity, and sleep apnea); *United States v. Ullings*, No. 1:10-cr-00406, 2020 WL 2394096, at *1 (N.D. Ga. May 12, 2020) (66 years old, hypertension, and obesity); *United States v. Foreman*, No. 3:19-cr-62, 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (58 years old, hypertension, and obesity); *United States v. Jenkins*, 460 F. Supp. 3d

Defendant's medical records have not been submitted for the Court to review, his presentence

investigation report indicates that he is otherwise healthy:

> Itah advised he is healthy and has no history of health problems. He reported no
> serious or chronic illnesses or medical conditions, but noted he is currently
> overweight. He listed his primary physician as . . . . Medical records were requested
> from the facility but remain pending receipt. However, his sister verified his overall
> health.

ECF No. [46] ¶ 66.

Additionally, Defendant does not persuade the Court that current procedures in place or

resources available at FCI Miami are insufficient to protect him from contracting the virus. Indeed,

the BOP website indicates that at FCI Miami, only one inmate and two staff members have tested

positive for COVID-19.[8] Moreover, "the BOP Director has not found COVID-19 alone to be a

basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL

1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1,

2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure

---

1121, 1125 (D. Colo. 2020) (61 years old, mini-stroke, migraines, and obesity); *United States v. Quintero*, 458 F. Supp. 3d 130, 131 (W.D.N.Y. 2020) (diabetes, compromised immune system, obesity, and hypertension); *United States v. Howard*, No. 4:15-cr-00018, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (chronic obstructive pulmonary disease, type two diabetes, obesity, stage 3 kidney disease, edema, open wounds on his legs, and diaphragmatic hernia); *United States v. Lacy*, No. 15-cr-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) (severe obesity, hypertension, and diabetes); *United States v. Ardila*, No. 3:03-cr-264, 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (71 years old, diabetes, cardiovascular disease, hypertension, asthma, and obesity); *United States v. Delgado*, 457 F. Supp. 3d 85, 89 (D. Conn. 2020) (severe obesity and sleep apnea); *United States v. Dillard*, 1:15-cr-00170 (D. Idaho Apr. 27, 2020), ECF No. [71] (obesity, diabetes, hypertension, chronic obstructive pulmonary disease, and severe mental health conditions); *United States v. Joling*, 466 F. Supp. 3d 1141, 1146 (D. Or. 2020) (hypertension, atherosclerosis, history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture, and history of cancer); *USA v. Trent*, No. 16-cr-00178, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (HIV/AIDS, diabetes, and obesity); *United States v. Zukerman*, 451 F. Supp. 3d 329, 330 (S.D.N.Y. 2020) (75 years old and suffers from diabetes, hypertension, and obesity) (order of authority in original)).

[8] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 23, 2021).

Case No. 19-cr-60274-BLOOM

to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Based on the discussion above, the Court concludes that Defendant has not satisfied his burden of demonstrating that compassionate release is appropriate.[9]

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [86]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 24, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[9] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting a sentence reduction, the Court does not need to address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).